EK:DCW

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M-10-617

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

JOSEPH DIAZ,

          Defendant.

- - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST
WARRANT

(T. 18, U.S.C., §
1029(b)(2))

EASTERN DISTRICT OF NEW YORK, SS:

       ROBERT J. KAATZ, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service ("USSS"), duly appointed according to law and acting as such.

       Upon information and belief, in or about and between June 2009 through August 2009, within the Eastern District of New York and elsewhere, the defendant JOSEPH DIAZ, together with others, did knowingly and with intent to defraud conspire to produce, use and traffic in one or more counterfeit access devices, to wit: credit cards and credit card account numbers, in a manner affecting interstate commerce, all in violation of Title 18, United States Code, Section 1029(a)(1).

       (Title 18, United States Code, Section 1029(b)(2))

       The source of your deponent's information and the grounds for his belief are as follows[1]:

---

[1] Because the purpose of this Complaint and Affidavit is to state only probable cause, I have not described all the relevant

1.  I have been employed by the USSS in New York, New York, for over two years. I have been trained and participated in investigations involving financial crimes and, in the course of these investigations, have executed search warrants, reviewed bank records, debriefed cooperating defendants and confidential informants, and secured other relevant information utilizing various investigative techniques. Through my training, education, and experience, I have become familiar with the manner in which credit card fraud is carried out.

2.  Through my experience and training, I am aware of how counterfeit credit cards are manufactured and used to make fraudulent purchases of goods and merchandise. Frequently, persons engaged in manufacturing counterfeit credit cards fraudulently obtain information about credit card holders and accounts through the use of a small electronic instrument called a "skimmer device." People engaged in the fraud scheme, often salespeople and cashiers at retail businesses, will swipe real credit cards through the skimmer device, thereby capturing credit card account information from the real credit cards.

3.  Next, people involved in the credit card scheme will often wire money overseas to obtain what are essentially blank plastic credit cards which purport to be Visa or Mastercard credit

---

facts and circumstances of which I am aware.

cards issued by legitimate financial institutions. In fact, these credit cards are fake. When the fake credit cards arrive in the United States, they are usually not embossed, meaning that they do not bear the raised account number and account holder name found on real credit cards. Also the fake credit cards are initially unencrypted. This means that pertinent account information has not been entered onto the magnetic strip on the back of the credit card, rendering the card useless.

4. After people engaged in the credit card scheme receive the fake credit cards in the United States, they transform the fake credit cards into counterfeit credit cards that can be used to make fraudulent purchases of goods and merchandise. First, the account information captured on the skimmer device is downloaded onto a computer. Then, the fake credit cards are embossed with the real account numbers and account names taken from the skimmer device. The embossing is accomplished through the use of a tool known as an "embosser." Next, the fake cards are encrypted by downloading real credit card account information from the computer to the magnetic strip on the back of the fake credit cards. The device used to accomplish the transfer of data from the computer to the magnetic strip is known as an "encoder" or "reader/writer." At this point, the cards can be used to make fraudulent transactions in the accounts of real credit card holders.

5. In or about and between June 2009 and August 2009, the defendant JOSEPH DIAZ, along with his co-conspirators Samuel Rosario, David Vidal and Fernando Lahoz, conspired to manufacture and use counterfeit credit cards. In furtherance of this scheme, DIAZ, Rosario, Vidal and Lahoz stole credit card account information from real credit card holders through the use of a skimmer device.

6. During the relevant time period, DIAZ worked as a cashier at a Tommy Hilfiger store located at 500 Broadway, New York, New York. Vidal and Lahoz provided DIAZ with a skimmer device. While he was working as a cashier, DIAZ swiped the credit cards of unsuspecting customers through the skimmer device, thereby capturing real customer credit card account information in the memory of the skimmer device.

7. On August 6, 2009, security officers with Tommy Hilfiger observed JOSEPH DIAZ skimming credit cards while working as a cashier at the Tommy Hilfiger store located at 500 Broadway, New York, New York. DIAZ was interviewed by the security officers and admitted that he had been swiping customer credit cards through the skimmer device. DIAZ gave the skimmer device to the security officers and provided a written statement admitting his involvement in using the skimmer device. DIAZ admitted to swiping multiple credit cards over the past few weeks, and stated that he had received $25 dollars for each credit card that he swiped through

4

the skimmer device. DIAZ was terminated from his employment at Tommy Hilfiger. Security Officers at Tommy Hilfiger later gave the skimmer device that DIAZ used at the store to USSS Special Agents.

8. In a subsequent non-custodial interview with USSS Special Agents, DIAZ admitted that he skimmed credit cards for Fernando Lahoz and David Vidal and that Lahoz and Vidal compensated him by giving him cash and counterfeit credit cards. In fact, DIAZ surrendered two counterfeit credit cards that Lahoz had given him.

9. An examination of records at Tommy Hilfiger reveals that on or about July 20, 2009, JOSEPH DIAZ was the salesperson who assisted Tommy Hilfiger customer John Doe with his transaction at the store located at 500 Broadway, New York, New York. USSS Special Agents examined the skimmer device used by DIAZ. The examination revealed that John Doe's credit card, a Visa credit card account issued to John Doe by Landesbank Berlin AG, in Berlin, Germany, had been swiped through the skimmer device, and that John Doe's credit card account information was captured on the skimmer device used by JOSEPH DIAZ.

10. On or about July 22, 2009, at a Target store located at the Atlantic Terminal Mall in Brooklyn, New York, co-conspirator Samuel Rosario purchased ten $100.00 Target gift cards. Rosario paid for the gift cards with a counterfeit Visa credit card bearing the account number and account information for the Visa credit card account issued to John Doe by Landesbank Berlin AG.

WHEREFORE, your deponent respectfully requests that defendant JOSEPH DIAZ be dealt with according to law.

 _____
ROBERT J. KAATZ
Special Agent
United States Secret Service

Sworn to before me this
1st day of June, 2010,


_____
United States Magistrate Judge
Eastern District of New York